UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, | § | |
| AS BROADCAST LICENSEE OF THE | § | |
| AUGUST 21, 2021 MANNY PACQUIAO | § | |
| V. YORDENIS UGAS CHAMPIONSHIP | § | Case No.  SA-24-CA-00921-XR |
| FIGHT PROGRAM; | § | |
| *Plaintiff* | § | |
| | § | |
| v. | | |
| | | |
| EDEN FRESH, LLC, ISRAEL JEBARAJ, | | |
| GIPSON ELUMALAI, | | |
| *Defendants* | | |

## <u>ORDER ON MOTONS FOR SUMMARY JUDGMENT</u>

On this date, the Court considered Defendants Eden Fresh, LLC, Israel Jabaraj, and Gipson Elumalai d/b/a Skywalk Sports Bar & Grill's Motion for Summary Judgment (ECF No. 25) and Plaintiff G&G Closed Circuit Events, LLC's Motion for Summary Judgment (ECF No. 27).  After careful consideration, both motions are **DENIED.**

## BACKGROUND

On August 21, 2021, Jabrone Laktzian, the bar manager at Skywalk Sports Bar & Grill ("the Bar"), paid to view a live broadcast of a boxing match between Manny Pacquiao and Yordenas Ugas ("the Event") on an internet-based streaming app called Fox Sports.  ECF No. 25-1 at 2; ECF No. 25-2; ECF No. 27-1 at 103.  Defendants reimbursed Laktzian, ECF No. 27-1 at 156, and used his Fox Sports account to display the Event on multiple televisions in the Bar, ECF No. 27-1 at 75–76.  Defendant Eden Fresh LLC owned the Bar, ECF No. 25-5 at 67, and Defendants Gipson Elumalai and Israel Jebaraj own Eden Fresh, ECF No. 27-1 at 106, 150; ECF Nos. 26, 29.

1

Meanwhile, Plaintiff G&G Closed Circuit Events, LLC had acquired exclusive authority to sub-license the closed-circuit telecast of the Event to "non-residential locations, including . . . bars, clubs, lounges, restaurants[,] and the like of a commercial nature" nationwide, with exceptions not relevant here. ECF No. 30-1 at 7, 18. To show the event, commercial sublicensees had to pay G&G a set rate depending on their capacity. ECF No. 27-1 at 40. Because the Bar's capacity was 100 people or less, the applicable fee would have been $1,300. ECF No. 25-4 at 9; ECF No. 27-1 at 40. Defendants did not pay this fee or otherwise enter into an agreement with G&G to show the Event at the Bar.

On August 19, 2024, G&G sued Defendants for intercepting, receiving, and/or publishing a satellite or cable signal without authorization, in violation of the Federal Communications Act ("the Act"), 47 U.S.C. §§ 553, 605. ECF No. 1. After discovery, G&G and Defendants cross-moved for summary judgment. ECF No. 25, 27.

## DISCUSSION

### I.    Summary Judgment Standard

To be entitled to summary judgment, a movant must show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show

summary judgment is inappropriate. *See Fields v. City of S. Hou.*, 922 F.2d 1183, 1187 (5th Cir. 1991). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Nor is a mere "'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

To conclude that there are no genuine issues of material fact, a court must be satisfied that no reasonable trier of fact could find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It "should review the record as a whole" and "give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and it must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). In deciding a summary judgment motion, the Court may, but need not, consider parts of the record not cited by the parties. *Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430, 444 (5th Cir. 2024) (citing FED. R. CIV. P. 56(c)(3)).

"On cross-motions for summary judgment, [courts] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

## II.    Analysis

G&G brings claims under 47 U.S.C. Sections 553 and 605. Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1); *J & J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 Fed. Appx. 313, 314 (5th Cir. 2020). Similarly, Section 605 prohibits unauthorized interception, receipt, and use of "communication[s] by radio[,]" including satellite transmissions. 47 U.S.C. § 605(a); *Enola Invs.*, 795 Fed. Appx. at 314.[1] Defendants argue that (1) neither statute applies where, as here, the defendant used the internet to receive the relevant communication; (2) the statute of limitations is two years and expired before G&G filed suit; and (3) even if Defendants are liable, enhanced damages would be inappropriate. *See* ECF No. 25. G&G responds that (1) Section 553 applies because the Bar's internet was through a cable provider, (2) the limitations period is three years and did not expire before G&G filed suit, and (3) G&G is entitled to enhanced damages and attorneys' fees. *See* ECF Nos. 27, 30.

---

[1] Unlike under Section 553, liability under Section 605 requires more than unauthorized receipt or interception; it also requires publication, divulgence, or use of a communication "for [one's] own benefit or for the benefit of another not entitled thereto." *See* 47 U.S.C. § 605(a).

Also, Section 605(a)'s first sentence could be read as a broader prohibition. It provides, "no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . ." But that sentence is "understood as 'regulat[ing] the conduct of communications personnel.'" *J&J Sports Prods., Inc. v. Mandell Fam. Ventures, L.L.C.*, 751 F.3d 346, 351 n.10 (5th Cir. 2014) (alteration in original) (quoting *Edwards v. State Farm Ins. Co.*, 833 F.2d 535, 540 (5th Cir.1987)). So it is inapplicable here.

4

a.  The "Internet Defense"

The primary question is whether Defendants can be liable under the Act for using the internet, as opposed to traditional satellite or cable, to intercept or receive a protected transmission. The parties do not point to, and the Court has not found, binding caselaw on point.  But after considering persuasive authority and the relevant statutes, the Court concludes that use of the internet does not provide a categorical defense against liability under Section 553 or Section 605. Instead, when a defendant used the internet to receive a protected transmission, the question remains whether they "intercept[ed] or receiv[ed]" either a "communications service offered over a cable system," 47 U.S.C. § 553, or a "radio communication," *id.* § 605.

The Fifth Circuit has recognized a "clear demarcation" between Section 605 and Section 553.  *Mandell Fam. Ventures*, 751 F.3d 352.  Section "605 deals with communications traveling through the air (via radio)," and Section "553 covers communications traveling over cable wire."  *Id.* 352–53.  The relevant transmission for purposes of this demarcation is the one the defendant intercepted or received—that is, how the communication was "transferred to the [d]efendant[]."  *See id.* at 351–52.  In *Mandell Family Ventures*, the defendants used a cable service to display a protected broadcast.  *Id.* at 347, 351–52.  The plaintiff argued that Section 605 still applied, because the broadcast "originated via satellite transmission."  *Id.*  The court disagreed, holding that Section "605 does not apply to [a] [d]efendant's receipt of communications by wire from [a] cable system."  *Id.*  at 353.  As such, whether the statutes apply depends on the type of communication the defendant intercepted or received, not the communication's original form.

Here, the parties agree that Defendants received the broadcast of the Event via the internet. Some cases have held that transmissions over the internet are categorically not covered by Sections 553 and 605.  *See, e.g.*, *G&G Closed Circuit Events, LLC v. 415 Trenton, L.L.C.*, No.

7:21-CV-00436, 2023 WL 3697057, at *4 (S.D. Tex. Jan. 4, 2023) (endorsing this defense in dicta); *G & G Closed Circuit Events, LLC v. Rojas*, No. EDCV1800438WDKJC, 2020 WL 7861979, at *4 (C.D. Cal. Oct. 5, 2020) (collecting cases in the Ninth Circuit).

But the statutes "say nothing one way or the other about the Internet." *J & J Sports Prods., Inc. v. Vega*, No. 5:15-CV-5199, 2016 WL 4132290, at *4 (W.D. Ark. Aug. 2, 2016); *see also Joe Hand Promotions, Inc. v. Cantina El Sol, LLC*, No. 8:22-CV-113, 2023 WL 3092800, at *7 n.8 (D. Neb. Apr. 26, 2023) (quoting *Vega*, 2016 WL 4132290, at *4–*5); *G & G Closed Circuit Events, LLC v. Liu*, 45 F.4th 1113, 1117 (9th Cir. 2022) ("[O]n their face, [Sections] 553 and 605 do not provide for an 'Internet defense' that automatically absolves an entity of liability . . . . Rather, these statutes regulate specific methods of transmission."). So an absolute "internet defense" would "necessarily [be] based" on the premise that "[i]nternet broadcasts are categorically different from radio, satellite, and cable and can never be transmitted via radio, satellite, or cable signal so as to implicate [Sections] 605 or 553." *G & G Closed Circuit Events, LLC v. Infante*, No. 120CV01400JLTSAB, 2022 WL 411847, at *11 (E.D. Cal. Feb. 10, 2022), *report and recommendation adopted*, No. 120CV01400JLTSAB, 2022 WL 1082567 (E.D. Cal. Apr. 11, 2022); *see also, e.g.*, *415 Trenton*, 2023 WL 3697057, at *4.

That is a faulty assumption. "[T]ransmissions over the Internet involve myriad technologies that may include both cable and satellite components." *Liu*, 45 F.4th at 1116. "Cable modem service transmits data between the Internet and users' computers via the network of television cable lines owned by cable companies." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 975 (2005). Internet services can also be offered through "satellite-based wireless networks." *Id.*; *see also Venture Commc'ns Coop., Inc. v. James Valley*

*Coop. Tel. Co.*, 72 F.4th 857, 860 n.1 (8th Cir. 2023) (Broadband internet "can be provided by fiber optic cable, wireless, satellite, digital subscriber line, or a cable modem.").

The statutes thus apply to some internet transmissions. Section 553 bars unauthorized interception or receipt of "any communications service offered over a cable system." 47 U.S.C. § 553. A "cable system" is "a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community." *Id.* § 522. As noted above, cable modem internet service uses "the network of television cable lines owned by cable companies." *Brand X*, 545 U.S. at 975. That is to say, it is "offered over a cable system." 47 U.S.C. § 553. Section 605 applies to "communication by radio," including by satellite. *Id.* § 605; *Enola Invs.*, 795 Fed. Appx. at 314. Use of "satellite-based wireless networks" to access the internet presumably involves many "communication[s] by" satellite, which Section 605 would protect. Given all that, there is no absolute "internet defense" against liability under Sections 553 and 605.

At the same time, G&G has not—as it claims in its summary judgment motion—provided conclusive evidence that Defendants' internet was "offered over a cable system." To show that Defendants' internet used a cable system, G&G relies on: (1) the fact that Spectrum, a company which also provides cable services, provided the Bar's internet, ECF No. 27-1 at 64, 86, 105–06, 172–73, and (2) the Bar's internet used a modem, which connected to a cable from outside the building, *id.* at 133, 153–54. That is not enough to preclude a fact issue. Perhaps Spectrum only offers internet over cable systems; or perhaps non-cable internet services that require a modem connected to a cable outside the building are uncommon. But the record includes little, if any, evidence on those points. G&G has thus not established its entitlement to summary judgment.

In sum, there is no absolute "internet defense" against liability under Section 553 or Section 605. But a plaintiff still must show that the relevant statute applies to the transmission at issue. G&G has not provided sufficient evidence to preclude a fact question on whether the Bar's internet was offered over a cable system. So G&G's Motion for Summary Judgment is **DENIED.**

    b.  <u>Statute of Limitations</u>

Defendants also argue that G&G's claims are untimely. The Act "does not specify a statute of limitations for actions by licensees such as [G&G] under [Sections] 553 and 605." *Prostar v. Massachi*, 239 F.3d 669, 671 (5th Cir. 2001). When federal law does not provide a limitations period for a federal cause of action, courts first look to analogous state law. *Id.* at 672. But analogous federal law can apply "where application of state law would 'frustrate or interfere with the implementation of national policies . . . or be at odds with the purpose or operation of federal substantive law.'" *Id.*

In *Prostar*, the Fifth Circuit applied the Copyright Act's three-year limitations period to claims under Sections 553 and 605. *Id.* at 671. It did so because "the cable industry is a distinctly national (and international) enterprise." *Id.* at 676. "A single federal [limitations period]" is thus necessary to "eliminate [the] practical difficulties" associated with applying "widely varying limitations periods." *Id.* at 676–77. In short, the Fifth Circuit applied the Copyright Act's limitations period to ensure interstate uniformity in a highly interstate industry. *See id.*

Defendants attempt to distinguish *Prostar* because it involved Louisianna law, whereas Defendants here propose adopting a limitations period from Texas law. But *Prostar*'s holding did not depend on the particular state law at issue; it was based on the nature of the Act and the industries to which it applies.

Defendants also cite a Texas Court of Appeals opinion applying a state statute's two-year limitations period to claims under Sections 553 and 605. *See J & J Sports Prods., Inc. v. JWJ Mgmt., Inc.*, 324 S.W.3d 823 (Tex. App.—Fort Worth 2010, no pet.). But that case explicitly "declined to follow *Prostar*." *Id.* at 831. And it acknowledged that *Prostar* "concluded that a single federal standard should apply." *Id.* at 829. Unlike Texas state courts, *id.* at 830, this Court is bound by Fifth Circuit precedent. The applicable statute of limitations is thus three years.

Defendants admit that the conduct underlying this lawsuit occurred on August 21, 2021. ECF No. 25 at 7. G&G filed the complaint on August 19, 2024. ECF No. 1. So G&G's claims are not barred by limitations.

c.  Enhanced Damages

Defendants also move for summary judgment against G&G's claims for enhanced damages. Sections 553 and 605 each provide for statutory damages within a given range. 47 U.S.C. §§ 553(c)(3); 605(d)(3)(C). They allow additional damages for violations "committed willfully and for purposes of commercial advantage or private financial gain." *Id.* § 553 (c)(3)(B); *see id.* § 605(d)(3)(C)(ii) (reading slightly differently: "willfully and for purposes of direct or indirect commercial advantage or private financial gain").

Given the complexity and limited methods of intercepting closed-circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast by chance, many courts, including this Court, have held such conduct to be willful and for the purposes of direct or indirect commercial advantage or private financial gain. *See Joe Hand Promotions v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008) (citing *Ent. By J & J, Inc. v. Al–Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002)). As one court observed, "signals do not descramble spontaneously, nor do television sets connect themselves to cable

distribution systems." *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). Just the same, pay-per-view broadcasts do not purchase themselves, nor do they display themselves in a commercial setting. *Cf. G&G Closed Cir. Events, LLC v. Cisneros*, No. 5:15-CV-302-DAE, 2016 WL 1322485, at *3 (W.D. Tex. Apr. 1, 2016) ("To divert a residential cable package into a commercial establishment is a deliberate act that evinces willfulness."). Summary judgment against enhanced damages is thus **DENIED.**

     d.  <u>Other Arguments</u>

     Because the Court denies the Motions for Summary Judgment for the reasons outlined above, it need not address the remaining arguments regarding vicarious liability, attorneys' fees, and the amount of damages.

<u>**CONCLUSION**</u>

     For the foregoing reasons, both Motions for Summary Judgment (ECF Nos. 25, 27) are **DENIED.**

     It is **FURTHER ORDERED** that the stay in this case is **LIFTED.**

     The Clerk is **DIRECTED** to **RE-OPEN** this case.

     It is **FINALLY ORDERED** that the parties shall submit a proposed amended scheduling order, to include a deadline for dispositive motions, **no later than thirty days after the date this Order is issued.**

     It is so **ORDERED**.

     **SIGNED** this 25th day of November, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE